### ROY B. WILSON V. STATE.

No. 24455. November 9, 1949.
Rehearing Denied January 11, 1950.

J. J. *Collins,* Lufkin, and *H. L. Edwards,* Nacogdoches, for appellant.

*Ward R. Burke,* District Attorney, Lufkin, and *R. A. McAlister, Special* Prosecutor, Nacogdoches, and *George P. Blackburn,* Austin, for the state.

BEAUCHAMP, Judge.

Roy B. Wilson was convicted for the murder of Bennett Spradley, a policeman of the city of Nacogdoches, and was given a penalty of three years in the penitentiary.

The evidence in the case supports the jury's verdict. From the standpoint of the state, appellant was living in the business district and occupying a place both as a residence and his place of business, where he was engaged in selling and handling second-hand clothing and other articles. On the previous day the appellant had been arrested and caused to pay a fine. At that time he made threats against the policemen, declaring that he was going to kill some of them. The state's testimony is to the effect that he was frequently drunk and causing disturbances about his place of business. On the day following the arrest, a party passing his store and residence saw him with a gun in his hand. He reported the matter to Mr. Spradley, the policeman. Spradley went to appellant's place and, as he approached, appellant drew a gun on the officer while he himself was still inside the house. Spradley ordered him to put down his gun and took his own pistol from the holster in a manner which would indicate that he was intending to enforce his order. The state's witnesses did not hear all that was said, but they testi-

fied that Spradley put his pistol back in the holster and was leaning on a counter when appellant fired the fatal shot with a shotgun. Spradley fell to the ground calling for help and, at the same time, attempted to raise up as he fired two shots at appellant. Neither of these shots took effect. Other parties ran to his aid and carried him to the hospital while officers arrested appellant. The officer who had arrested him the previous day reminded him of the threats which he had made and appellant boasted that they could see that he carried it out. The evidence shows that appellant was about half dressed and had been in that condition during the day while he was drinking and talking much to himself.

Defendant introduced some witnesses who saw the shooting, or a part of it, from a distance and we find no material conflict in their statement, so far as they testified on the subject. Testifying in his own behalf, appellant said that he was sixtynine years of age, was born in Nacogdoches County where he had resided the greater part of his life; that the building he occupied had partitions and a part of it was used for a residence. He said he was lying asleep on the bed when Spradley approached; that the first words were spoken by Spradley, who said: "Come out old man. If you don't, I am going to shoot you." Appellant walked to the door and saw that the officer had a pistol and he heard the officer repeat the foregoing statement. Appellant says he then stepped back in his living quarters, picked up a single barrel shotgun loaded with buckshot, returned to the door and saw Mr. Spradley looking around, with a gun in his hand. As he opened the door, Spradley leveled the gun on him. Appellant then turned around and shot immediately and, as he viewed it, Spradley shot at the same time. Two bullets fired by Spradley came within a few inches of appellant's body. He says that the officer was standing up at the time the shots were fired. This is in conflict with the state's testimony, all of whose witnesses said that Spradley had fallen to the ground before he fired the two shots attributed to him. Appellant says that the reason he shot was because he believed Spradley was going to shoot him and he fired in self-defense; that he would not have shot him except that he believed his life was in immediate danger. He said he had done nothing to justify an arrest and that the officer did not tell him that he had a warrant. He knew the deceased and considered him a courageous man, one who would shoot; that he was a dangerous man and that he was afraid of him. He admitted paying a fine for drunkenness on the previous day, but said that he was drunk. He also stated that he had not drunk anything the day of the killing. This, too, is in conflict with state witnesses.

Defendant introduced a number of witnesses as to his good reputation "for peace and violence."

Appellant filed a large number of exceptions to the court's charge and presented a great number of special requested charges. We have examined these and find no merit in any of them. In his brief he presents and discusses four "Assignments of Error." It is difficult to understand how one can prepare a case for appeal and overlook the frequently repeated statement that assignments of error have no place in criminal procedure. The first of these relates to the failure of the court's charge to give to him a satisfactory charge on self-defense. That question has been considered independent of the assignment of error, with the result that we think the court was unduly specific and exceedingly liberal to appellant in his charge on self-defense.

The "Second Assignment of Error" is in the same condition as the foregoing, and the ruling will be the same.

The "Third Assignment of Error," so designated, attempts to complain of the court's charge to the effect that the deceased had a right to carry a pistol at the time and place he was killed. We note a charge on this subject and, while we find no purpose in the charge, it certainly was harmless.

The "Fourth Assignment of Error" attempts to complain of the admission of certain testimony. All such complaints must come to this court by bill of exception approved by the trial judge and filed within due time.

We find in the record four bills of exception. Each complains of questions asked character witnesses on cross-examination. Mr. Bentley was asked: "Did you hear of Mr. Wilson drawing a pistol on the sheriff, Mr. McLain?" Another question, "Did you ever hear of Mr. Wilson drawing a pistol or a gun on any of the officers?" The second bill complains that W. B. Hall, a character witness, was asked on cross-examination, "Did you ever hear of Mr. Wilson drawing a gun on Ernest McLain while he was an officer?" "Did you ever talk to any member of his family about his peace and violence?" In Bill of Exception No. 3 it is complained that another witness was asked, "Did you ever hear of him drawing a pistol on the Sheriff, Mr. McLain?" In exactly the same language other witnesses were asked the same question.

The state's brief attacks each of these bills on the ground

that it is multifarious. That position need not be discussed. The questions asked were perfectly proper. Appellant takes the view that the result of the questions was to bring charges against the party on trial of having committed other and distinct offenses. We do not so view the questions. The state has a right to inquire into and develop before the jury the extent of knowledge which a character witness has of and concerning the party for whom he testifies. A distinguishment is to be made between a question which asks a character witness if he has *heard* of other events and a question which asks him if he *"knows"* about such other event. An adequate discussion of this distinguishment is found in McNaulty v. State, 138 Tex. Cr. Rep. 317, 135 S. W. 2d 987, and in Stewart v. State, 148 Tex. Cr. Rep. 480, 188 S. W. 2d 167. Each question raised by appellant in these bills will be found discussed in the foregoing opinions by this court.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant evidences dissatisfaction with the original opinion herein wherein it was held that the trial court was fairly liberal in his charge relative to the law of self-defense; and appellant again complains because of there being no charge on the privilege given to all persons to resist an effort at an unlawful arrest. Paragraphs 13, 14, 15 and 16 of said charge, occupying about three typewritten pages thereof, were concerned with instructing the jury as to appellant's right of self-defense as brought out by the testimony. Appellant testified that when approached by the deceased who said, "Come out, old man. If you don't, I'm going to shoot you", that such was the reason he killed Mr. Spradley; that he was afraid the deceased was going to kill him. Appellant further testified: "I shot him because he was saying, 'Come out, old man. If you don't, I'm going to kill you;' I will say and cursing and everything else." We have searched the record and find that the appellant's reason given for the shooting of Mr. Spradley was that he thought Spradley was going to shoot him. Nowhere does the appellant say or intimate that he thought he was going to be placed under an unlawful arrest, or any arrest of any kind, but that he was going to be killed by Spradley. We think the trial court was correct in his charge on self-defense.

A further complaint is made because of the cross-examina-

tion of certain character witnesses for appellant who had testified as to appellant's good reputation for peace and violence. These witnesses were cross-examined by the state and asked if they had heard of appellant's action relative to occurrences that had some bearing on one's reputation as herein inquired about. We recognize and reaffirm the rule that testimony of such imputed acts is not admissible, but reputation, being based upon hearsay, if such there were, an inquiry as to whether the witness had heard thereof would go far to show to what extent the witness had familiarized himself with such reputation as well as what weight is to be given to the witness' testimony. Of course, the questions asked for such testing of the knowledge of the witness should in all fairness be based upon actual occurrences or hearsay relative thereto. See Vallone v. State, 141 Tex. Cr. R. 220, 147 S. W. (2d) 227. We think that the means of knowledge, and the persons contacted and talked with relative to such reputation, should have some bearing on the weight to be given by the jury to the character witness' conclusion as to one's reputation.

The motion is overruled.