Roosevelt SMITH, Appellant.

v.

The STATE of Texas, Appellee.

No. 36531.

Court of Criminal Appeals of Texas.

Feb. 12, 1964.

Wardlaw & Cochran, Fort Worth (on appeal only), for appellant.

Doug Crouch, Dist. Atty., Albert F. Fick, Jr., Asst. Dist. Atty., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is murder; the punishment, life imprisonment in the state penitentiary.

The State's evidence reflects that the homicide occurred in the Morocco Club, a negro bar located in Fort Worth, Texas. Appellant was playing dominoes with deceased and one other man, identified as "Leonard," when deceased stood up and looked at appellant in an angry manner. The two men looked at each other for a few moments, whereupon appellant stood up, paid for the game and left the club. He then returned with a shot gun, about ten minutes later, in a rush, kicking the door open and stating to the deceased, "Here I is nigger." Appellant took a few steps toward the deceased and fired the weapon, it being two feet from the deceased at the moment of discharge. Deceased, who was struck in the chest by the charge, took a few steps and fell on his face. Appellant then turned and left the club.

It appears that appellant then walked home and called the police, stating what he had done and also requesting that an ambulance be sent.

Several of the State's witnesses testified that when appellant returned with the gun,

deceased had both hands on a pool table and made no move toward appellant.

Herbert V. Baker, a witness called by the State, shown to be a licensed mortician in Tarrant County, stated that deceased had a wound in his chest two inches in diameter which severed the aorta or main artery from the heart and that in his opinion death was caused by the gun shot wound.

The appellant took the stand and gave his version of the occurrence. He related that on the day in question he (appellant) had gone hunting, that being the reason for his having the shot gun in the car. The witness further related that he went to the club to meet his brother, who was to bring appellant's check to that place. He had played a few games of dominoes with the deceased and Leonard when deceased jumped up and put his hand in his pocket and told appellant, "Don't call me nigger," to which appellant replied, "you is a nigger." Following this exchange of words appellant put some change on the table and walked out. Upon reaching his car he realized he had left his keys on the table. Appellant further stated that he took his shotgun back into the club with him to get his keys because deceased, "had made a pistol play and I figured he was intending to try to hurt me; had his hand in his pocket. I took it back in for protection."

Appellant testified that when the shot was fired, deceased had his hand in his back pocket and was coming toward him and also that he (appellant) was only trying to scare deceased and not kill him.

On cross-examination appellant identified the gun in evidence as the one used in the shooting and further stated that when deceased jumped up from the domino game he stated to appellant, "I will kill you."

No other witness remembered seeing the keys appellant claimed to have left on the table in the club. The jury resolved any conflict in the testimony in favor of the state.

■ We find the evidence sufficient to support their verdict. It is first contended by appellant that reversible error was committed upon cross-examination of appellant when the following transpired:

Q: "I believe you told Mr. Cline that you had never had any difficulty with the law with the exception of traffic tickets, is that correct?"

A: "I think I did."

Q: "You told him that you had never been fooled with or done anything in the world other than traffic tickets?"

A: "I been picked up on suspicion, something like that."

Q: "You have been picked up on suspicion, something like that. Now, do you know Rayford Hall?"

A: "Yes, my brother-in-law. I also explained that to him."

Q: "You and Rayford Hall had a little trouble, didn't you?"

A: "I wouldn't say exactly trouble, that's my brother-in-law."

Q: "Just your brother-in-law. You never cut a man up with a knife, did you?"

A: "I never cut him up."

Q: "Did you stick him with it?"

A: "No. We was tussling and the knife slipped and cut him across the back."

Q: "You were scuffling with your brother-in-law and somehow or other the knife came out of your pocket?"

A: "No, it didn't."

■ At this time counsel for the appellant interposed an objection which was sustained and the jury was instructed not to consider this evidence for any purpose. We think the learned trial judge fell into error by his ruling. The appellant not only made a showing that he was eligible under the suspended sentence law, but he

went further and virtually made a blanket statement about his exemplary conduct, as may be seen from the foregoing testimony adduced from appellant. By doing so appellant "opened the gate" for the state, and the state then had the right to refute these statements. In Kemp v. State, 157 Tex.Cr.R. 158, 247 S.W.2d 398, a prosecution for driving while intoxicated, wherein defendant, in response to questions of state's counsel concerning amount of intoxicating beverage he had consumed, replied that he had drunk none, and that he and never drunk any intoxicating liquor of any kind, evidence, by way of questions propounded to defendant, of former convictions for intoxication was properly admitted as rebuttal evidence. In Lampkin v. State, 47 Tex.Cr.R. 625, 85 S.W.2d 803, in a prosecution for using abusive language, where the appellant testified in his own defense that he did not swear on the occasion charged, and that he had never sworn in his life, the State was permitted to prove, in rebuttal, the appellant had used profane language in the presence of other witnesses on another occasion. Also see: Eloms v. State, 159 Tex.Cr.R. 471, 264 S. W.2d 725.

Adelle Williams was called by the appellant as a character witness and testified that appellant's reputation as to being peaceable, law-abiding, orderly and quiet, was good. She further testified that his reputation in the community as being a truthful person was good. On cross-examination she was asked, " * * * did you hear about the trouble he (appellant) had with Rayford Hall on May 6, 1953?" An objection was made by appellant and overruled by the Court.

Q: "Did you hear about that trouble that he had with Rayford Hall on May 6, 1953?"

A: "Yes."

Appellant contends that admitting this testimony over objection was error. He contends that allowing such "innuendo" would in effect be allowing a character witness to testify about a mere argument or misunderstanding with Rayford Hall. We cannot agree with appellant's contention. The State has a right to inquire into and to develop before the jury the extent of the knowledge which a character witness possesses concerning the party for whom he testifies. Wiley v. State, 153 Tex.Cr.R. 370, 220 S.W.2d 172; Wilson v. State, 154 Tex.Cr.R. 140, 225 S.W.2d 565, McCormick and Ray, Texas Law of Evidence, Vol. 2, Sec. 1492; Pitcock v. State, 168 Tex.Cr.R. 204, 324 S.W.2d 855. Such inquiry is not made to impeach the accused as a witness, but to test the weight and credibility of his character witness. Vance v. State, Tex.Cr. R., 365 S.W.2d 182.

While we do not approve of the form of question propounded as it does imply that the trouble occurred, and the state is prohibited from conducting the cross-examination or framing the interrogatories so as to show specific acts of misconduct on the part of the accused or that he has, in fact, been guilty of such acts, yet we find that this question injected no new fact as the same trouble was before the jury in the cross-examination of the appellant. We find no merit in this contention of appellant.

Appellant's further contention that the incident in 1953 was too remote to be the subject of a legitimate inquiry is also without merit. Vance v. State, supra; Richardson v. State, 154 Tex.Cr.R. 422, 228 S.W.2d 179. Also, the application of the remoteness limitation must of necessity be left to the discretion of the trial court.

Finding no reversible error, the judgment is affirmed.