**James Leon FRENCH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 40329.**

Court of Criminal Appeals of Texas.

May 10, 1967.

Edgar L. Berlin, Beaumont, for appellant.

W. C. Lindsey, Dist. Atty., John R. DeWitt, Asst. Dist. Atty., Beaumont, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Murder with Malice; the punishment, life imprisonment in the Texas Department of Corrections.

The record reveals that on October 8, 1965, Beaumont City police officers, answering a radio call, arrived at the residence of R. D. Russell. They found Russell lying on a bed in a bloody condition, appearing to have been badly beaten. Russell was taken to a hospital where he died two days later.

On December 30, 1965, appellant was indicted for the murder of Russell by the means of:

" * * * striking, hitting and beating him with his fists and kicking and stomping him with his right foot and an artificial left leg, being worn at the time as a substitute leg because defendant's real leg was amputated."

State's witness Florida Van Arsdale, testified that he, the appellant, appellant's wife, Otto Herman Meyers, and a man named Poole were all drinking at the Van Arsdale's home on the morning of October 8, 1965. At such time the conversation centered around the fact that the deceased had that morning reported to the police that Meyers or the appellant, or both of them, had stolen a pressure cooker from him. Van Arsdale testified he heard appellant say to Meyers, "I ought to go around over there and get that no good bastard and whip his ass", as well as other similar statements. Sometime after the departure of the appellant and Meyers, and as a result of these remarks, Van Arsdale went to deceased's home where he found him in a bloody condition. He testified, without objection, that the deceased said, "Leon and Herman done it."

William McKenzie was present when the beating took place and testified he saw appellant and Meyers "repeatedly kick" the deceased and that the kicking seemed to last ten to fifteen minutes; that appellant had used both legs in the attack.

Doctor H. B. Williford testified the cause of death was due to a cerebral concussion and internal hydrocephalus, traumatic.

Testifying in his own behalf, appellant stated he had gone to the deceased's residence in the company of his wife, and Meyers on October 8, 1965, to continue drinking. He admitted that he hit Russell, knocking him down when the deceased called him a liar, but testified this was the extent of any violence done by him, and that he did not kick the deceased. He stated that he saw Meyers beating the deceased and kick him once before he (the appellant) left the house. Appellant further admitted he stated upon leaving, "I will kill you, you

son-of-a-bitch, if you try to get me in trouble again", but that he had no such intention. Appellant offered testimony that he was a "wino" and had over a hundred arrests for "drunk". Police officers called by appellant, testified that despite his drunk arrests, appellant did not have a reputation for being a violent person, or had ever shown any propensity for violence.

The Court charged on the law of principals.

Appellant's sole ground of error is that the trial court erred in failing and refusing to grant his motion for mistrial when the following questions were propounded to him on cross-examination:

"Q Have you ever been accused of using that leg on someone?

A No, sir.

Q Either on or off of it?

A No, sir.

Q Do you know a man by the name of Francis Ealy?

A Yes, sir.

Q He accuse you of it?"

At this point, appellant's objection that the question was not material and not relating in time to the offense charged was sustained. At such time no other objection or request was made.

Thereafter, the State's counsel asked appellant the following question:

"Q Your testimony is that you can't use the leg to kick with?

A Yes, sir."

Subsequently, when appellant was re-called for further cross-examination, the following occurred:

"Q And that is not the first time you have ever hit anybody when you all were drinking?

A No.

Q And you have kicked before, too, haven't you, Leon?

A No, sir.

Q When you would be drinking?

A No, sir.

Q In fact, you use that leg real well, don't you?

A In walking, yes, sir. Only when I am drinking and that's why it gets me arrested a lot of times because I can't *haldle* it good when I am drinking.

Q And you never have used that leg on anyone else?

A No, sir.

Q Either on or off?

A That's right.

Q What about this man I asked you about before?

MR. BERLIN: If the Court please, I object to that as there being no predicate laid as to time or place.

Q Within the last six months, have you used that leg, haven't you, to—

MR. BERLIN: Now, if the Court please, the District Attorney knows that is inadmissible.

MR. LINDSEY: Your Honor, he is the one that is interposing this defense—never used that leg—never used it in violence—not even capable of—

THE COURT: Sustained."

Thereafter, upon the request of appellant, the Court instructed the jury to disregard the question and any of its implications. The motion for mistrial was overruled.

■ Even if the defense's testimony that despite at least 100 arrests for drunk, appellant was a peaceful alcoholic and not a man of violence, did not authorize the asking of such questions, when taken in connection with the appellant's denial of the

use of the leg on the deceased or anyone else, or that he was capable of kicking with it, a predicate was laid for the questions asked under the holdings of this Court in Smith v. State, Tex.Cr.App., 375 S.W.2d 299; Eloms v. State, 159 Tex.Cr.R. 471, 264 S.W.2d 725; Kemp v. State, 157 Tex.Cr.R. 158, 247 S.W.2d 398; Lampkin v. State, 47 Tex.Cr.R. 625, 85 S.W. 803. The State should have been allowed to refute such testimony.

In Kemp v. State, supra, a driving while intoxicated prosecution, questions propounded to appellant on cross-examination about prior convictions for intoxication were held proper, where the appellant in answering State counsel's earlier question concerning the amount of intoxicating beverage he had drunk on the occasion in question answered that he had nothing to drink at all that day, that he did not drink at all, and had never drunk any intoxicating liquor of any kind.

In Lampkin v. State, supra, an abusive language prosecution, the State was permitted to prove that appellant had used profane language in the presence of other witnesses on another occasion where he had testified in his own defense that he did not swear on the occasion charged, and that he had never sworn in his life.

Even if we be wrong in this conclusion, it is observed that the appellant steadfastly denied the use of the leg on anyone else, the question relating to another man (Ealy) was never answered, and the jury was instructed to disregard. No further evidence was offered pertaining to this subject matter. We perceive no error.

In pronouncing the life sentence, it appears the trial court failed to give application to the Indeterminate Sentence Law (Article 42.09, Vernon's Ann.C.C.P.). Therefore, the sentence is reformed to provide that the appellant shall be confined in the Texas Department of Corrections for not less than two years nor more than life imprisonment.

As reformed, the judgment is affirmed.